The next matter before us is 24-3051 Blalock v. SRKBS Hotel. Counsel, we're ready when you are. Thank you, your honors. May it please the court. Jeff Wilson, appearing on behalf of the plaintiff appellant, Mayilla Blalock. So, your honors, what we have in this case is a hotel that was experiencing a dramatically rising level of crime on the property. Ignoring its own employees' pleas for extra security or an additional person to work the night shift, and ignoring customer warnings. Can you pause for one minute? Can we close the doors in the back, please? Thank you. Sorry. No problem, your honor. Ignoring customer warnings about suspected gang members being on the property, drug users being on the property, and then when they admit that customers became more aggressive generally in May of 2020, specifically took action that made it more conducive and attractive for people to congregate on the property that were intent on committing crimes. And despite acknowledging that it should not have rented the room to these two ladies on this night in question, because it should have set off alarm bells, they did rent the room to them. And then the one employee on the property went to his specific duties in the breakfast room, where he was unable to watch the door, unable to watch the security cameras. So he wasn't in a position to see what the general manager admits is a sign that the patrons of the hotel may be in danger. In and out activity from the rooms. People congregating with alcohol. Counsel, can I ask you, so in Siebert, the Kansas Supreme Court discusses the need for a direct relationship between the harm caused and sort of the underlying facts or circumstances that would have given rise to this duty to provide security. And I read your brief to argue what I think your expert referred to as the broken window theory of liability, that as you mentioned, this hotel in Wichita was experiencing a lot of crime. There was allegations of potential prostitution and drugs, and there were, I think, 11 different violent crimes within a three-year period. But none of those involve the type of offense at issue here. You know, firearms, shooting in the parking lot. So the direct harm here that was caused to your client was from a pretty outlandish set of facts. So one, is there any legal authority that says the broken window theory of liability here applies under Kansas law? I think so, Your Honor. It's kind of something that's frustrated me in this case is that no one's ever really explained what direct relationship means. But I think it's kind of been recognized implicitly. In the Bell case, for instance, which is not precedential, it's unpublished, at the very end of the opinion, and I think really this was the linchpin for that panel's decision, they noted that there was no indication that those shooters in that case were there to take advantage of their lax security protocol. So it's kind of a conduciveness to commit crime, making the property more attractive to people that might be intent on committing crimes. I do think it's recognized in other states using the same restatement test. I did cite that in my brief. That's also referenced in American jurisprudence. But it has not been specifically set out as this is appropriate in Kansas law. But I would submit that doesn't mean it's inappropriate. The Siebert Court talked about five factors, but it noted that these are not exclusive. You can consider other things. And if you look at other law in the state, such as Shirley v. Glass v. the Appellate case, where it talks about the duty of care is kind of intertwined with the foreseeability of harm. So the more foreseeable it is that someone may be hurt or harmed, it doesn't necessarily raise the duty to more than reasonable care, but it makes complying with that duty and what it means to comply with that duty more. But isn't that why the Kansas Supreme Court says it requires this sort of direct link between what is foreseeable and the harm that actually occurred? Because as I read the record that's been, I think, well-developed, frankly, about not just the high-crime area, but the past offenses and what was going on at this hotel, again, there were violent crimes, but there was just nothing that even categorically remotes to a hotel guest completely uninvolved with the assailants, just sleeping in her bedroom, who was harmed by this other criminal conduct. So how closely related or directly related, to use the language of the Kansas Supreme Court, does it have to be? Because it doesn't seem like you have anything that's directly related, or at least explicitly. Judge Federico, it depends on how you look at what directly related means. The appellees in this case in the district court, in my view, took it to mean it does have to be some similar instances or some similar prior violent crime. But I would submit that if that's what it means, then what the Kansas Supreme Court did was say, we're doing away with the prior similar incidents test, but then readopting it under a different name. Well, and if you look at our case in Hardee's, that's us attempting to apply Kansas law, right? Yes. And there, there were no similar incidents at all at Hardee's, and the totality of the circumstances test was the character and a broader look at the turnpike itself in terms of that. So under our case law, do you need to have a similar incident? No, Your Honor. Or even under Kansas, it doesn't have to be. So, but what, I have a little confusion on your claims, because you've got the premises liability claim, and then you have this section that's other claims. Right. And you mentioned whether they should have rented the room to these young ladies at all, and that seems to go to your other claims argument. Am I correct on that? I believe so, Your Honor. I think the district court did note that there's kind of been a distinction in these cases. There's cases like the Gold v. Taco Bell case, Kimple v. Foster, where there was some indication that they knew kind of right around the time it was happening that it might happen, and so that created the duty, whereas in other cases like ours, it's more of a longer period of time where there's kind of foreseeability that building and building. Well, you're sort of relying, I think it's the restatement that talks about you can't have a parking lot in a high crime area that's not lighted and just wait until one of your patrons is injured before you have a duty.  And I guess the argument is that if you're letting, you know there's prostitution, you know there's drug dealing, drug use, you see people armed with firearms, and you see people who are throwing gang signs, and that that is enough for you to have a duty under Kansas law. Am I understanding the argument? I believe so, Your Honor, and I think even with my pause at saying I definitively understand what directly related means, I think the CBER court did definitively say you do not have to have prior similar incidents, even if they are important to the analysis. You can have a duty in the absence of them. What about, it seems here the court seemed to conclude this isn't a high crime area. You're challenging that finding, that you're claiming that that was inaccurate, right? I am, Judge. I think there was sufficient evidence presented for a jury to certainly conclude that it was a high crime area, and not just citywide, and not even really to this region of Wichita, but this specific property with how the crime kind of, the center of crime migrated to be directly over the hotel by 2020, and just the increasing numbers of reports over the years, and even the testimony from the employees themselves that it was getting worse, and they were asking for off-duty police officers to be present or a second person to work the night shift. But I want to, if I can, Judge Federico, you asked about directly related, and I submit that I pointed out in the briefing, like, my best guess is it really has something to do with causation, because that phrase direct relationship or directly related, that appears when we talk about proximate causation. And I think the Applees even kind of maybe inadvertently agreed with that, because on page 16 of their brief they say, quote, guided by Bell, the district court deduced that prior crimes with no causal relation to the ultimate crime cannot be credited by the court. But even if we assume that's not the case, I think there is evidence that's directly related to the issue, or to what happened in this case, and that's the prior circumstances include gang members being on the property, staying on the property, customer complaints about that, employee complaints about that, firearms being seen at the hotel, ammunition being found in rooms. The hotel knew they did not have enough people working the night shift. They had one person for the entirety of the hotel. They knew there was not secure access to the hotel. Anybody could get in from multiple points of entry. They knew that no one would be there to watch the front door or the side door or the security cameras to see who's coming and going. And Mr. Townsend admits that he knew, he should have known that they were going to be planning a party, and the shooters entered through the front door and either walked right past where Mr. Townsend was or went up the stairs right next to the front door. So can I understand this argument then to be that it doesn't have to be foreseeable to the owners of the Super 8 that a sleeping hotel guest may get shot through stray bullets, but it's enough to say that it's foreseeable that some harm could occur to the sleeping hotel guest just by allowing this sort of general activity of lawlessness to occur at the hotel? That's right, Your Honor. I don't think, and I pointed this out in my briefing, you don't have to foresee this exact incident. And I would take it even further in that they don't have to see that some generalized harm would happen to the sleeping hotel guest but any of their patrons. And the key is they have to be able to foresee that because of the circumstances on the property that would give them kind of knowledge or foreseeability as a matter of law. Well, and they had a violent instance against a pregnant hotel guest, as I recall, because she complained about a theft in her room and then was beaten right in front of the hotel staff. Am I remembering that correctly? That is correct, Your Honor. I believe that appears on Volume 2, pages 279 through 281. Beyond the incidents of violence, there were also threats of violence, and specifically threats to come back and shoot the place up. Why is the domestic violence not relevant? So you might have noticed that only the appellees presented that, and that was before the district court as well. I mean, violence is violence, isn't it? Violence is violence, and the reason I didn't address that is specifically because my expert said he wouldn't consider it. And the reason he told me that is domestic violence, there's really no way to predict it. It's not the same as crime happening against a person. Well, if you're willing to beat up your girlfriend, you might be willing to beat somebody else up, right? I can certainly see that, Your Honor, and I think a jury may view it that way, but there's enough facts in the brief already I didn't feel the need to add to it. Counsel, can I just stop you there just because your time is running short? Yes. But you concede that there had not been a shooting? There had not been a shooting, yes. Okay. So I guess your argument is a shooting was reasonably foreseeable given the gang activity? The argument is that some generalized risk of harm to the patrons above and beyond the ordinary was foreseeable, and I think that's all you have to prove to show duty. Well, don't you have to show something particular to this case or no? I mean, could you show, I mean, does the character of the crime lead to some connection to or the generalized crime lead to this particular one? I don't think that you have to have foreseen or have this specific incident be foreseeable when it comes to the creation of duty. Now, if we were talking about proximate causation, that might be a little bit of a different question. I still wouldn't take it as far as you have to foresee this exact incident, but I hope that answers your question, Judge Ivey. Okay. I'd like to reserve the rest of my time for rebuttal. Okay. Thank you. May I proceed? May it please the Court. On behalf of the appellees in this case, the important features about this case are that in this case, I don't think that we need a recitation of the facts because I think the facts have been pretty well laid out. There is a couple important, very germane and salient facts, though, in this case, which I think creates the distinction and distinguishes this case as opposed to some of the other examples that were talked about by the appellant in this case. First of all, there is absolutely no evidence whatsoever of any violent crimes or shootings that had taken place at this property. Well, there's no shootings, but there's certainly violent crimes. I just described one where a pregnant guest was beaten in the lobby, and there were two suspected rapes, and there were a bunch of batteries and aggravated batteries that are in the police report. The police were called 100 times. I don't know how you can say there's no violent crime just because it was a crime on a domestic partner. Well, I think that the Siebert case, I think, prescribes exactly what is necessary with regards to the quality of the evidence that has to be presented in this case because the important thing about this type of case is that the law is that the owner of a business is not the insurer of the safety of its customers or patrons. Well, that's the general rule, but there's an exception. Right, and so for the appellant in this case to be successful, they have to come in on an exception. And that was established, the law in this that is followed in the State of Kansas, the law in this was set forth in the Siebert case. In the Siebert case, they talked about the fact that the owners are not the insurers of the safety of the customers, but they also talked about this issue with regards to foreseeability. And in that regard, they, as we all know, they change the test from prior instances or prior incidents of crime to a totality of circumstances. And this is where they talked about the type of thing that you're concerned about, Judge, with respect to the evidence that has to take place with regards to clear that hurdle. Well, let's describe the hurdle first. This is what the Siebert case says is that a possessor of land has a duty to take precautions against criminal conduct on the part of third persons if the place or character of his business or his past experience is such that he should reasonably anticipate careless or criminal conduct on the part of third persons. Well, they certainly knew about criminal conduct. There was rampant prostitution and drug use in the hotel. Well, when we're looking at the facts of this case, Judge, we're talking about a shooting that took place and a shooting that occurred in the parking lot. And it is not a disputed fact that there had never been a shooting that occurred at this particular location. And you think that's required under Kansas law, that there had to be a prior shooting at this location? Well, I think as Judge Federico pointed out and has stated, and I will quote to you, the circumstances that must be, to be considered must, not could be, not might be, but must have a direct relationship to the harm incurred in regard to foreseeability. And that is a direct relationship that we're talking about. So in this particular case, and all these cases, Judge, I think are fact sensitive. In this case, we're talking about a shooting that took place. Yeah, but you're focusing on the facts a little bit here. So Mr. Townsend, the night auditor, he goes up to room 319. It's after 2 a.m. He knocks on the door and he says, you've got to break up the party. And I think 29 people come out of that room. And the video shows people walking around the hotel carrying big bottles of alcohol. And so it's an environment that it seems just kind of obvious to him that something bad may happen. And as they're all out in the parking lot, and again, it's 2.30 in the morning. They're right outside the front lobby, the doors of the front lobby. Why wasn't it so obvious to him that at that point, to provide just a basic duty of security to other patrons, he needed to call Wichita police and say, I need you to help or come here and break this up? Well, I think Judge Crabtree, in his order, understood the fragility of this analysis. And that's why I think that he did a granular dissection of the facts and of the available Kansas law in this regard to reach the conclusion that he did. And the way that he gets there to his conclusion is that when you look at the facts, you look at on that particular evening, you have to be able to make a leap to say, okay, there's a party going on, and it's 2.30 in the morning, to the leap is then to that there is going to be a shooting here. But isn't there a foreseeable risk that something bad is going to happen? Well, according to Judge Crabtree, no. Well, I agree he has a very thorough order, and he did a great job reciting all the case law, but our review is de novo. So I look at these same facts. But I think my response to that, Judge, is that if you're sitting there and you're in a position where you have to judge that, and then you're talking about having to provide some type of safety or precaution, without knowing or without having noticed or just suspecting that something may happen, aren't you then being put in a position where you're the insurer of the safety of these people? Because this is not a situation where you're looking just at the party. You're looking at the fact that your hotel or motel has become a haven for prostitution, drug use, drug dealing, and armed gang members. That's all evidence before us. Judge, I would dispute the fact that there was gang activity and prostitution.  Let me interrupt you, not you interrupt me. I'm sorry. The testimony that we have to take, all inferences in favor of the non-moving party, is that there were complaints about gang members who were throwing gang signs and were identified as gang members and self-identified as a member of the Crips who'd been staying there for a month and that they were armed. That's what we have to take, and all reasonable inferences from that, in favor of the plaintiff. So the question then becomes, at what point do you say that on this particular night that there was... I don't think it has to be this particular night. I think that the danger has to be foreseeable based on the circumstances and the totality of those circumstances, including it's in a high-crime area, you've had violent crime there before, and you see these obvious issues for normal patrons are going to be associating with this. I look at it this way. If there was a KU party and all of this was going on, would I let my kid go? No, because it's foreseeable that something really bad is going to happen. Well, then, the next inquiry then with regards to the Siebert case is what level of security is necessary, and according to Siebert, the only standard is a reasonable standard. And I think that Judge Cratchery, in his order, had gone through a comparison of the case law that was involved and saw that there were security cameras that were set up at this hotel and that there was monitoring that was going on and that when notice came of this party that was going on, it was dispersed. And I think that goes to the claim for failure to intervene. I think that there was an attempt to intervene, but with regard to the security cameras, I guess my question is if someone claps in the forest and no one hears it, they've got security cameras but nobody to watch them. The security cameras are at the front desk, and they only have a limited amount of them, but they don't expect anybody to be there monitoring because they have other duties. Well, I would point out in this particular case that when the night person, the night manager at that time, went up to disperse the party, the shooting took place in the parking lot three minutes later, and this was when he was about to go out and tell them that they were supposed to leave the parking lot. It is, I think, of note that the evidence was that when he went up to the room to disperse his party, the evidence is pretty clear that there was no resistance, there was nothing that he saw that would indicate any illegal activity, and not only that, but there was a willingness for these people to leave. And apparently they left peaceably and exited the building, and he even checked throughout the building to make sure that they did, and they did. So when they get out to the parking lot, that's when the problem happens, and this is a situation. Most of these cases involve situations where the victim is actually, is a crime of opportunity, the victim is actually the person who is the target of the crime. This is not that case, and I think that that also creates an important distinction because this is something that's going on in the parking lot, and this is a random incident that happens when this bullet goes through the wall. So this isn't a situation where a customer or a patron is being a victim of a crime in this particular case. Yeah, but often we see foreseeability come up in the causation analysis of a claim like this, but here we're looking at only whether or not the legal analysis as to foreseeability impacts whether the hotel had a duty. So I struggle to think about that argument you just made, which is a sound argument if the case were to proceed about why there's a lack of causation here to the actual harm occurred, but don't we think about it differently when we're applying foreseeability as to only whether there's a duty to provide security? Well, I think that, as Judge Crabtree pointed out, I think that the inquiry goes to the reasonable nature of the security provided because this was, without question, a spontaneous event that occurred. It wasn't something that could have been foreseen by anybody, that somebody was going to pull out a gun in the parking lot at this time and the accident occurred. So when you have that coupled with the fact that there's never been an incident of shooting on this property before, which apparently was corroborated by the police testimony in this case, then we have the question of are we going to squeeze this into the exception in this case, or are we then requiring this hotel to be the insurer of the safety of its patrons under this particular incident? And I think that Judge Crabtree, after he went through all of this specifically and the cases that are engaged in these types of incidents, has found that in this case there was no way that this incident could have been foreseen, this incident, such as to instill a duty upon the hotel owner. And I do just want to comment briefly about what I think Judge Crabtree referred to as the conducive environment theory. And I think that that was addressed, and he also specifically applied the law as it had been established with regards to that and found that it's improper to say that an entire city or entire area or entire region is a high crime area, because I think that what he saw and the way he interpreted Seabrook, which I think is the way Seabrook was meant to be interpreted, is that you have to have some showing that there is a frequency and severity of criminal conduct that substantially exceeds the norm. So you're saying, so Wichita apparently, news to me, is more dangerous than 98% of the cities in the United States, apparently. So you're saying that this hotel can't be in a high crime area because the entire city is a high crime area? Is that, I'm trying to understand your... No, what I'm saying is you cannot say that just because this business sits in what is considered to be a larger high crime area, that that would instill a duty upon this to provide... Why not? I mean, if you're going to have a motel and you know it's in a high crime area, doesn't that require you to have different security measures than if you were in a very low crime area? Well, Judge, what I would say is that in the Seabrook case, apparently not. Well, first of all, Judge Crabtree found that the jury could find this hotel was in a high crime area, as I read his opinion. A high crime area, but what he also determined, and what the evidence did not show, was that there were no incidents of shootings. And that's, I think... Yeah, there were no incidents of shootings, but I don't see anything in the case law that says you have to have a shooting. In fact, that's why they got rid of the similar incidence test and went to the totality of the circumstances test in Kansas, as I understand the case law. You don't have to have a prior... The Hardee's case that this court did, there was no prior abduction and rape from that Hardee's. In fact, there was no prior violent crime at that Hardee's. But what there was in that area... Well, a rather long area. It was the entire turnpike. And there was a long discussion about that in the Hardee's case as to why that factored in on that particular case. In this case, as the Seabrook case, as a Kansas Supreme Court said, the circumstances to be considered must have a direct relationship to the harm. That's the Supreme Court saying that. And so my question to you is, if the hotel knows they have armed gang members, drug dealing, prostitution, is it foreseeable, and prior violent crime, and they're in a high crime area, is it foreseeable that their normal guest might be subjected to injury based on this criminal activity that they're turning a blind eye to? Again, I turn to Seabrook, which says it is... Because the one thing about the Seabrook case is that they kind of broke... The judges kind of broke through the fourth wall when they said, you know, we understand that these parking lots are grounds for all kinds of crime and larceny. And that's why they threw in the concept that when you make this analysis, when you're looking at the totality of circumstances, it is only where the frequency and severity of criminal conduct substantially exceed the norm. Well, wouldn't you say the frequency and severity of criminal conduct exceeded the norm at this motel? I mean, apparently it was used by prostitutes with some regularity. There was drug dealing, drug using going on. I mean, that's criminal conduct, isn't it? That could be considered criminal conduct. But I think, you know, when you look at the record, Judge, the record clearly spells out what the amount of criminal cases were that relate to this particular property. And I think Judge Crabtree laid that out. And, you know, that's where you have to... This analysis requires an inquiry into the severity and frequency of the crimes before we do that. And you couple that with the fact that there has to be a direct relationship. The circumstances must bear a direct relationship to the harm incurred. I think maybe the most important factor about this case, Your Honors, is that according to the employees of the hotel, Mr. Wissinger, Mr. Townsend, Mr. Malone, Mrs. Malone, not only was some risk of harm to the patrons of the hotel foreseeable, it was actually foreseen. And that's why Mr. Wissinger and Mr. Malone were asking, we only have one person working in the night for the entire hotel, and their primary job is setting up breakfast away from the front desk. We need another person. We need an off-duty police officer. We need some security. Because otherwise, someone's going to get hurt. Counsel, can I ask you to respond to an argument that was made about the timing? It seems to me the worst facts here for you are that Mr. Townsend knocks on the door at room 319 at 2.25 a.m., and then we know from the surveillance at 2.33 the shooting occurs. That's eight minutes. So when you think about, you know, what's a foreseeable duty, beyond saying I'm going to break up the party, I mean he doesn't even really have an opportunity to do much more before what is a really extreme act of violence occurs in the parking lot. So how do you respond to that? So if you watch the video and you look at the clips, basically there's the east entrance to the hotel, the front door. All three shooters came in that door along with many other people. And down that hallway between the front door and the elevator where they ultimately go up to the third floor, that's where the breakfast room is. That's where Mr. Townsend is. So even if the argument is Mr. Townsend had no idea 30 people were in that room or that they were violent or that they were drinking or that they were having a party, he should have known. And the only reason he didn't is because the hotel knowingly let him work alone when they knew he couldn't watch the security cameras. And security cameras, with no one watching them, are no security cameras at all. The last thing I'd note, Your Honors, is the generalized duty of reasonable care. Kansas has kind of gone away from specialized duties, beginning with Reardon v. King, 2019 Supreme Court case, Granados v. Wilson, 2023 Supreme Court case. And I think that's what they will ultimately do the next time they have this issue. Now, there has been a case that's gone up before them, the Hammond v. Sanlo Leyte VFW case from 2022. But in that case, it's important to note that the defendant in that case was not contesting that they duty existed. They were only contesting—and I'm out of time. I will wrap up with that. Thank you.